[Crim. No. 889. Second Appellate District, Division Two.—December, 7, 1922.]

In the Matter of the Application of B. F. TEPPER for a Writ of Habeas Corpus.

[1] MUNICIPAL CORPORATIONS—LOS ANGELES LICENSE ORDINANCE—UNJUST DISCRIMINATION.—The Los Angeles license ordinance is a revenue measure, and not in any sense a regulatory or police enactment, notwithstanding the title of the measure is "an ordinance providing for licensing and regulating the carrying on of certain professions, trades, callings and occupations"; and the provision of section 79 of that ordinance, which provides that every person "carrying on the business of a retail drugstore where spirituous, vinous or malt alcoholic liquors . . . are sold, distributed or given away for medicinal purposes upon a physician's prescription" shall pay fifty cents "for each such prescription filled" is unjustly discriminatory, and is violative of subdivision 21 of section 2 of the freeholders' charter of that city, which provides "that no discrimination in the amount of

license tax shall be made between persons engaged in the same business, otherwise than by proportioning the tax to the amount of business done."

PROCEEDING in Habeas Corpus to secure the release of petitioner from custody after conviction of violating the Los Angeles License Ordinance. Petitioner discharged from custody.

The facts are stated in the opinion of the court.

Ray E. Nimmo and Lloyd W. Moultrie for Petitioner.

W. D. McConnell, City Prosecutor, J. Friedlander, Assistant City Prosecutor, J. D. Taggart, Deputy City Prosecutor, Jess E. Stephens, City Attorney, and Chas. B. MacCoy, Deputy City Attorney, for Respondent.

WORKS, J.—Petitioner is in the custody of the chief of police of Los Angeles under a judgment convicting him of a violation of section 79 of Ordinance No. 41,950 of the municipality, as amended by a later enactment. Section 11 of the ordinance, which is introductory to the sections following it, reads: "The amount or rate of license fees to be paid to the City of Los Angeles by any person, firm, association or corporation engaged in or carrying on any profession, trade, calling, or occupation hereinafter designated is hereby fixed and established as hereinafter in this ordinance provided, and such license fee shall be paid by every person, firm, association or corporation engaged in carrying on any such profession, trade, occupation or calling in the City of Los Angeles." Section 79 provides: "For every person, firm or corporation conducting, managing or carrying on the business of a retail drugstore where spirituous, vinous or malt alcoholic liquors, containing more than one-half of one per cent of alcohol by volume, are sold, distributed or given away for medicinal purposes upon a physician's prescription, fifty cents (50c) for each such prescription filled; provided nothing in this ordinance shall be deemed or construed to apply to prescriptions containing other ingredients than spirituous, vinous or malt alcoholic liquors containing more than one-half of one per cent of alcohol by volume. The license provided for in this section shall be payable monthly, and in ascertaining

the amount of license to be paid, the person, firm or corporation procuring such license shall render to the City Clerk a written statement, sworn to before some officer authorized to administer oaths, showing the number of prescriptions during the month next preceding the date of such statement." Petitioner, who was conducting a retail drugstore at the time of his arrest, is suffering punishment under his conviction because of the fact that he failed both to pay the license fee and to make the statement provided for in section 79. As, however, the statement is required merely for the purpose of ascertaining the amount of the license fee, we need concern ourselves only with the part of the section denouncing a failure to pay the fee prescribed. If, as claimed by petitioner, the requirement that the license fee be paid is void, the requirement that the statement be made falls with it.

[1] One of the contentions made by petitioner is that the provision in section 79 for a license fee is unjustly discriminatory. In dealing with this question it is to be noted, first, that the entire ordinance of which section 79 is a part is a revenue measure, and not in any sense a regulatory or police enactment. It is true that the title of the measure is "An ordinance providing for licensing and regulating the carrying on of certain professions, trades, callings and occupations"; but the supreme court has said of an enactment with an identical title, "While thus described as 'regulatory' an inspection of the ordinance discloses that it is an ordinance simply for revenue, the only attempt at regulation being the prohibition against conducting or carrying on any of the enumerated professions, trades, callings, or occupations without first procuring a license so to do" (*City of Los Angeles* v. *Lankershim*, 160 Cal. 800 [118 Pac. 215]). An inspection of the text of the measure now before us places it in the same category with the ordinance referred to in the language just quoted. Certainly, a view of section 79 convinces that the only attempt at regulation therein contained is "the prohibition against conducting or carrying on" the business therein mentioned. There is no general language of the ordinance as a whole which carries into section 79 any further or greater "regulation." Taking the ordinance, then, as a revenue measure, pure and simple, we are brought to a mention of subdivision 21 of section 2 of the freeholders'

charter of Los Angeles. It gives the municipality power to license businesses and callings, *"provided,* that no discrimination in the amount of license tax shall be made between persons engaged in the same business, otherwise than by proportioning the tax to the amount of business done." Can the provisions of section 79 of the ordinance be harmonized with this language of the city's organic law?

All who conduct "the business of a retail drugstore" are required to pay a graduated license tax by the provisions of a section of the ordinance to which we have not yet adverted, section 155. This graduated tax, which is based upon a sliding scale proportioned strictly upon the amount of business done by different concerns, and which, therefore, falls within the language of subdivision 21 of section 2 of the charter, had been paid by petitioner along with the other retail druggists of the municipality. So far so good, but section 79 represents an attempt to provide an additional schedule. Not only so, but the attempt appears not to have been made upon any principle of graduation whatsoever, with the "business" itself as a basis. Subdivision 21 of section 2 of the charter, in providing for a proportioning of license tax only "to the amount of business done," plainly means that the proportion shall depend upon the activities in particular cases of the entire "business" itself, and not upon a part or fraction of general business done in the sale of a single article or commodity handled by the "business" as a whole. The subject matter of section 79 is not a business at all, but merely a part of the business of a retail druggist. This proposition is to us self-evident. A retail druggist is plainly engaged within the main lines of his business as such when he fills physicians' prescriptions calling for the furnishing or compounding of drugs or medicines for healing or curative purposes, whether such prescriptions call for "spirituous, vinous or malt alcoholic liquors," or simply for alcohol along with other ingredients, as well as when they call for ipecac or asafetida. If authority is necessary upon such a manifest proposition, it is to be found in *Commonwealth* v. *Fowler,* 96 Ky. 166 [33 L. R. A. 839, 28 S. W. 786]; *McNulty* v. *Toopf,* 116 Ky. 202 [75 S. W. 258], and Freund on Police Power, section 223, although we are not called upon to decide the constitutional question referred to in those authorities.

Upon these considerations it seems clear to us that section 79 of the ordinance cannot stand, in the light of subdivision 21 of section 2 of the charter. Section 155 of the ordinance having provided a proper graduation under subdivision 21, the proportion thus provided is utterly destroyed if the mandate of section 79 be followed. In fact, section 79 were void if section 155 had no existence. No license tax is proportioned upon business done by a retail druggist where he is required to pay a tax of fifty cents, or any other sum, upon the filling of each single prescription composed of or containing a particular ingredient, whether it be alcohol or menthol. Under such a requirement, a particular druggist who has more calls for the filling of prescriptions containing the ingredient so discriminated against may be called upon to pay, when the total of such prescriptions filled by him is computed, a heavy tax, while other druggists are made to pay a slight tax, or no tax whatever, though these latter may be conducting businesses of much greater magnitude than the first, considering the entire business operated by them as compared with that operated by the first.

We are cited to various California cases upon this question by counsel on both sides of the controversy, but none of them is greatly helpful to us, because of the difference in the questions involved. We do refer, however, to *City of Los Angeles* v. *Lankershim,* 160 Cal. 800 [118 Pac. 215], as lending a general support to the conclusion which we have reached. Having arrived at that conclusion it becomes unnecessary to discuss other points made by petitioner.

Petitioner is discharged from custody.

Finlayson, P. J., concurred.

CRAIG, J., Concurring.—Under the freeholders' charter of Los Angeles, subdivision 21 of section 2 thereof, the power of the municipality to discriminate in the amount of license taxes between persons engaged in the same business is limited to discrimination ''by proportioning the tax to the amount of business done.'' Respondent insists that the ordinance here under consideration divides those engaged in the retail druggist business into two classes, the first consisting of those who sell liquor upon prescription by a physician, and the second being those who do not.

Assuming that this is the intent of the ordinance, and that it is a lawful classification, the levying of a definite tax upon each prescription, regardless of its value, is an unlawful discrimination between members of the first class. It cannot be said that the number of prescriptions filled is in any sense a measure of the "business done." Upon this ground I concur in the conclusion of my associates.