## GREAT ATLANTIC & PACIFIC TEA CO. v. MORRISSETT, State Tax Com'r, et al.

### No. 221.

District Court, E. D. Virginia.
April 30, 1931.

SOPER, District Judge, dissenting.

Hunton, Williams, Anderson & Gay, of Richmond, Va., for complainants.

W. W. Martin, Asst. Atty. Gen., and Henry R. Miller, Jr., of Richmond, Va., for respondents.

Before PARKER and NORTHCOTT, Circuit Judges, and SOPER, District Judge.

NORTHCOTT, Circuit Judge.

This is a suit in equity brought by the Great Atlantic & Pacific Tea Company, a corporation, hereinafter referred to as complainant, against C. H. Morrissett, state tax commissioner for the state of Virginia, John E. Rose, Jr., commissioner of revenue for the city of Richmond, Va., and Dave E. Satterfield, Jr., commonwealth's attorney for the city of Richmond, Va., hereinafter referred to as respondents, seeking to enjoin the respondents, the tax administrating officials for the state of Virginia, from imposing upon or collecting from the complainant a distributing house license tax under section 188 of the Virginia Tax Code (Acts 1928, c. 45). A temporary restraining order was entered by the judge below, and a court composed of three judges was convened under section 266 of the Judicial Code, as amended (28 USCA § 380), which court heard the application of complainant for an interlocutory injunction.

The complainant, an Arizona Corporation, operates in many states of the United States retail grocery stores, and began operating such stores in Virginia as early as 1904. During the calendar year 1929 complainant operated approximately 226 retail grocery stores in the state of Virginia. Approximately 190 of these stores were served by what is known as a distributing house, located in the city of Richmond. Merchandise was distributed to the various retail stores, and, in addition to those located in Virginia, distribution is made from the Richmond house to the stores of complainant in North Carolina, West Virginia, and Tennessee. About 80 per centum of the goods passing through the distributing house was manufactured by complainant, or purchased by it outside of Virginia, and shipped to the distributing house, the remaining 20 per centum being purchased from manufacturers and wholesalers in Virginia. About 45 per cen-

tum of the goods sold by complainant in its retail stores in Virginia does not pass through the Richmond distributing house.

Section 170 of the Constitution of Virginia provides that the General Assembly "may levy a license tax upon any business which cannot be reached by the ad valorem system."

Section 188 of the Tax Code of Virginia is a statute levying an annual license tax on merchants. In 1928 (Acts 1928, c. 45), the General Assembly, in enacting the present Tax Code of Virginia, amended the merchant's license statute by the addition of what is now the last paragraph of section 188. This paragraph reads as follows: "For every distributing house or place in this State (other than the house or place of manufacture) operated by any person, firm or corporation engaged in the business of a merchant in this State, for the purpose of distributing goods, wares and merchandise among his or its retail stores, a separate merchant's license shall be required, and the goods, wares and merchandise distributed through such distributing house or place shall be regarded as purchases for the purpose of measuring the license tax."

In addition to the tax on retail stores, the state of Virginia also levies a license tax on wholesale stores, equal in amount to that levied on distributing houses.

Complainant contends that the distributing house license is invalid as violative of the provisions of the Fourteenth Amendment of the Federal Constitution for the reason that it imposes an arbitrary and unreasonable classification, and, therefore, denies complainant the equal protection of the law.

In recent years, owing to the rapid growth and development of what is known as chain stores, there have been a number of decisions of the courts, both state and federal, dealing with the question of taxation, as attempted to be applied to these stores, and, in the course of the preparation of this opinion, the court has endeavored to examine as many of these decisions as could be found.[1]

It is contended on behalf of complainant that the taxing of a distributing warehouse is merely an effort to place an additional tax or burden upon chain stores, and thereby require them to pay a greater tax than other retail stores engaged in the same business; that a distributing house is merely a necessary incident or arm of the retail store system, and not taxable separately, such a tax being, in effect, an additional tax on the method or manner of conducting such business. On the other hand, the respondents contend that a distributing house that distributes to "stores" is in the same class as a wholesale house, and performs the same function; that a distributing warehouse requires the same use of the streets, the same fire and police, and other public service protection, and occupies the same general relation to the taxing power as a wholesale house. The respondents further contend that a retail store, owned and operated singly, when it sells its goods to the public sells them burdened with both the wholesale and retail tax, and that, where a number of stores are operated together, as here by the complainant, which virtually does its own wholesaling through its distributing house, the goods are sold subject only to the retail tax. It is further contended by the respondent that the distributing house is properly classified and properly taxed as a wholesale house or a warehouse. It is con-

---

[1] Among others, the following opinions have been examined: City of Danville v. Quaker Maid, Inc., 211 Ky. 677, 278 S. W. 98, 43 A. L. R. 590; City of Covington v. Dalheim, 126 Ky. 26, 102 S. W. 829; Read v. Graham (Ky.) 102 S. W. 860; City of Seattle v. Dencker, 58 Wash. 501, 108 P. 1086, 28 L. R. A. (N. S.) 446, 137 Am. St. Rep. 1076; Moffitt v. City of Pueblo, 55 Colo. 112, 133 P. 754; People v. Raynes, 136 App. Div. 417, 120 N. Y. S. 1053; In re Tepper, 66 Cal. App. 98, 212 P. 220; State of Missouri v. Ashbrook, 154 Mo. 375, 55 S. W. 627, 48 L. R. A. 265, 77 Am. St. Rep. 765; Williams v. Garignes, Tax Collector, 30 La. Ann. 1094; In re Hines, 33 Cal. App. 45, 164 P. 339; City of Los Angeles v. Lankershim, 160 Cal. 800, 118 P. 215; Commonwealth of

Virginia v. Bibee Grocery Co., Inc., 153 Va. 935, 151 S. E. 293, 295; Great Atlantic & Pacific Tea Co. v. Doughton, Com'r, 196 N. C. 145, 144 S. E. 701; Great Atlantic & Pacific Tea Co. v. Maxwell, 199 N. C. 433, 154 S. E. 838; Louisville Gas & Electric Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 72 L. Ed. 770; Quaker City Cab Co. v. Pennsylvania, 277 U. S. 390, 48 S. Ct. 553, 72 L. Ed. 927; Schlesinger v. Wisconsin, 270 U. S. 230, 46 S. Ct. 260, 70 L. Ed. 557, 43 A. L. R. 1224; Royster Guano Co. v. Virginia, 253 U. S. 412, 40 S. Ct. 560, 64 L. Ed. 989; Chalker v. Birmingham & N. W. Ry. Co., 249 U. S. 522, 39 S. Ct. 366, 63 L. Ed. 748; Southern Railway Co. v. Greene, 216 U. S. 400, 30 S. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247; Cotting v. Kansas City Stock Yards, 183 U. S. 79, 22 S. Ct. 30, 46 L. Ed. 92; Gulf, Colorado & Santa Fé Ry. v. Ellis, 165 U. S. 150, 17 S. Ct. 255, 41 L. Ed. 666; Lawton v. Steele, 152 U. S. 133, 137, 14 S. Ct. 499, 38 L. Ed. 385; Jackson v. State Board of Tax Commissioners of Indiana (D. C.) 38 F.(2d) 652; Hart Refineries v. Harmon, 278 U. S. 499, 49 S. Ct. 188, 73 L. Ed. 475; Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 529, 67 L. Ed. 929; Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237; Rast v. Van Deman & Lewis Co., 240 U. S. 342, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; Armour & Co. v. Commonwealth of Virginia, 246 U. S. 1, 38 S. Ct. 267, 62 L. Ed. 547; Citizens' National Bank v. Durr, 257 U. S. 99, 42 S. Ct. 15, 66 L. Ed. 149; Bradley v. Richmond, 110 Va. 521, 526, 66 S. E. 872; Id., 227 U. S. 477, 33 S. Ct. 318, 57 L. Ed. 603; Woco Pep Co. of Montgomery v. City of Montgomery, 219 Ala. 73, 121 So. 64; Norfolk v. Griffin Bros., 120 Va. 524, 91 S. E. 640; Hotelling v. City of Chicago, 66 Ill. App. 289; American Tobacco Co. v. Danville, 125 Va. 12, 99 S. E. 733; Macon Sash Door & Lumber Co. v. Macon, 96 Ga. 23, 23 S. E. 120.

ceded that the tax imposed by the statute in question here is equal to the tax on a wholesale house. In Hart Refineries v. Harmon, Treasurer, 278 U. S. 499, 49 S. Ct. 188, 189, 73 L. Ed. 475, Mr. Justice Sutherland says, with regard to classification for taxing purposes: "That clause does not prohibit classification; and the power of the state to classify for purposes of taxation is of wide range and flexibility, provided that the classification rest upon a substantial difference so that all persons similarly circumstanced will be treated alike. Statutes which tax one class of property while exempting another class necessarily result in imposing a greater burden upon the property taxed than would be the case if the omitted property were included. But such statutes do not create an inequality in the constitutional sense. Nor is the imposition of an excise tax upon one occupation or one activity from which other and different occupations or activities are exempt, a denial of equal protection. It is enough if all in the same class are included and treated alike. These propositions are so firmly established by repeated decisions of this court that further discussion is unnecessary."

Again in Louisville Gas & Electric Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 425, 72 L. Ed. 770, Justice Sutherland has said: "It does not, however, forbid classification; and the power of the state to classify for purposes of taxation is of wide range and flexibility, provided always, that the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' F. S. Royster Guano Co. v. Virginia, 253 U. S. 412, 415 (64 L. Ed. 989, 990), 40 S. Ct. 560; Air-Way Electric Appliance Corp. v. Day, 266 U. S. 71, 85, 69 L. Ed. 169, 177, 45 S. Ct. 12; Schlesinger v. Wisconsin, 270 U. S. 230, 240, 70 L. Ed. 557, 564, 43 A. L. R. 1224, 46 S. Ct. 260. That is to say, mere difference is not enough; the attempted classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.' Gulf, C. & S. F. R. Co. v. Ellis, 165 U. S. 150, 155 (41 L. Ed. 666, 668), 17 S. Ct. 255."

In the present case, in the light of these decisions of the Supreme Court, we are of the opinion that the classification made by the statute is a reasonable and not an arbitrary one. Certainly, "all persons similarly circumstanced" are treated alike. Everyone who operates a distributing house is subject to a tax. Webster defines distribute as meaning "to divide among several or many." Manifestly, there can be no distribution unless there is more than one to which to distribute. Every distributing house performs the function of a wholesale house, and to classify a distributing house with a wholesale house for the purpose of taxation certainly is reasonable and not arbitrary.

"Any classification is permissible which has a reasonable relation to some permitted end of governmental action. * * * It is enough, for instance, if the classification is reasonably founded in 'the purposes and policy of taxation.' " Watson v. State Comptroller of New York, 254 U. S. 122, 41 S. Ct. 43, 44, 65 L. Ed. 170.

" * * * It is unquestionably true that the maintenance and operation of a large distributing house in addition to operating seven retail stores imposes upon the commonwealth and the cities thereof a greater burden in fulfilling their obligations of protecting property rights, maintaining streets and highways, as well as furnishing sewer and other sanitary conveniences." Commonwealth v. Bibee Grocery Co., supra.

It certainly could not be maintained that a manufacturer's tax, if levied on all manufacturers, could not be levied on one who only manufactured for his own wholesale or retail stores.

It is contended that there is no real difference between complainant's distributing house and a place maintained by a large department store from which goods are supplied to the various departments of one store, and that to tax in the one case and not the other is discriminatory. We cannot agree with this contention. The one is a place corresponding to a wholesale house, the other simply a storage house, and to classify them differently for purposes of taxation is well within the functions of the taxing power of the state.

"The Legislature of the state may exercise a wide discretion in selecting the subjects of taxation, particularly as respects occupation taxes. It may select those who are engaged in one class of business and exclude others, if all similarly situated are brought within the class and all members of the class are dealt with according to uniform rules." Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 529, 67 L. Ed. 929.

This particular statute has been held constitutional by the Court of Appeals in the case of Commonwealth v. Bibee Grocery Co., supra, and we agree with the conclusion reached by the Supreme Court of Appeals in Virginia in that case. The injunction prayed for will accordingly be denied, and the bill dismissed.

SOPER, District Judge (dissenting).

The objectionable feature of the statute is its failure to tax all alike in like circumstances. The law applies only to a distributing house, operated by a person who has two or more retail stores for the purpose of distributing goods among them. It has no application to a person who operates only one retail store, no matter how large a business is done. The glaring exemption is the department store owner, who operates a separate warehouse for the storage of his goods and the distribution of them among the departments of his retail establishment. It is said that the statute imposes a reasonable tax because a distributing house that distributes to stores is in the same class and performs the same function as a wholesale house, requiring the same use of the streets and the same fire and police protection, and hence should pay the same tax. It may be conceded that these facts furnish a sound basis for a tax, but it is obvious that they are equally descriptive of the function performed by the warehouse of a department store. The affidavits in the case tend to show, and it is a matter of common knowledge, that the activities carried on in the warehouse of a department store are substantially similar to those of the distributing house of a chain store business. In both, the goods are stored and made ready for retail sales, and an important feature of both businesses is the elimination in large measure of the middleman or wholesale dealer. It may be literally true that the goods of a department store owner are not distributed from the warehouse in precisely the same manner as the goods from a chain store warehouse. But this distinction is tenuous to say the least, since in one case the goods are distributed among separate departments under the same roof, while in the other they are distributed amongst stores in separate buildings; and, in any event, we do not solve the difficulty by pointing out fine distinctions between the chain store warehouse and those of other retail businesses. The essential defect remains that the statute deliberately excepts from the tax warehouses substantially similar to those made subject to its burdens.